IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ANTONIO RODREGIS DUFF, ) | | |
| AIS # 186551, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | | CIV. ACTION NO. 2:05cv627-MEF |
| ) | | (WO) |
| PRISON HEALTH SERVICES, *et al.*, ) | | |
| ) | | |
| Defendants. ) | | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Antonio Rodregis Duff ("Duff") claims that his civil rights were violated during his incarceration in Bullock County Correctional Facility. Specifically, Duff contends that defendants Prison Health Services, Doctor Tahir Siddiq, Nurses Katherine Taylor and Anne Groom, and Officers Mose Foster and Harvey Ruffin acted with deliberate indifference to his health by delaying or failing to provide him adequate medical treatment.

The defendants filed a written report and supporting evidentiary materials addressing Duff's claims for relief. The court deems it appropriate to treat these responsive pleadings as a motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and the response in opposition filed by Duff, the court concludes that the defendants' motion for summary judgment should be granted.

## I. STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce some evidence supporting his constitutional claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987). Although factual inferences must be viewed in a light most favorable to the non-moving party, and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## II.  FACTS

Duff received extensive medical treatment for constipation during his incarceration in Bullock County Correctional Facility from 2004 until his transfer to another facility on July 22, 2005.  During this time, he was also afforded several tests and evaluations by free-world physicians concerning his complaints of stomach pain.  For example, on September 14, 2004, Dr. John Tomberlin conducted a barium enema on Duff, which returned normal results.  On September 20, 2004, a radiologist determined that x-rays of Duff's abdomen were negative for abnormalities.  On September 21, 2004, Duff was examined by Dr. Joseph W. Jackson, a gastroenterologist, who determined that additional testing was necessary.  On September 26, 2004, a radiologist noted that X-rays of Duff's abdomen indicated that Duff had "a large amount of fecal matter in the colon[, that] the soft tissue structures show no significant abnormality[, that] there are no significant calcifications[, and that] the bowel gas pattern is non-specific."  (Def's Ex. A, DOC Radiology Services Request and Report.)  On November 4, 2004, Duff underwent an esophagogastroduodenoscopy (EGD).  After reviewing the EGD test results, Dr. Jackson determined that Duff suffered from "erythema of the distal esophagus suggesting mild gastroesophageal reflux disease" and "erythema of the antrum . . . suggesting mild gastritis." (Def's Ex. A.)  In addition, Dr. Jackson found that there was "no evidence of ulcers" and that the duodenum, cardio fundus, and body of the stomach were normal.  (*Id.*)  At some point after Dr. Jackson's final consultation, Dr. Siddiq

advised Duff that "nothing else [would] be done because they w[ere]n't going to spend any more money on [him]." (Doc. No. 27-1, Pl's Affid, p. 3.)

Throughout his imprisonment at Bullock County Correctional Facility, Duff was routinely provided medication for his stomach problems. However, on one occasion while in disciplinary segregation, Duff encountered difficulties in obtaining treatment for his constipation. On May 30, 2005, Duff submitted a sick call request, in which he complained:

> I'm continuing to have stomach problems, and I feel as if I'm not digesting properly. I continue to vomit and having problems having a bowel movement. Everyday I feel as if I'm getting weaker and can hardly walk due to the stomach pain. I'm also coughing up green colored mucus.

(Def's Ex. A; Doc. No. 27, Pl's Ex. A-X5.) The following day, Dr. Siddiq conducted an examination of Duff and noted that he would make a final assessment after receiving Duff's test results. (Def's Ex. A, Progress Notes dated May 31, 2005.) During pill call later that day, Nurse Taylor did not give Duff his medication. (Doc. No. 27-1, Pl's Affid., p. 3.) Duff's attempts to discuss this matter with Nurse Groom were unsuccessful. (*Id.*) On both June 1 and June 2, 2005, Duff complained to Officers Foster and Ruffin that he was suffering from stomach pain and that he had vomited. (*Id.*, p. 1.) These officers, however, did not escort him to the health care unit. (*Id.*, p. 2.)

On June 2, 2005, Duff submitted an additional sick call request, stating that he "need[ed] something for stomach pain and constipation[, that he had not] had a bowel

movement since last Thursday," and that he wished to speak with a doctor. (Def's Ex. A; Doc. No. 27-2.) That same day, Dr. Siddiq's office received test results from the laboratory, indicating that Duff's liver enzymes were within normal limits. (Def's Ex. A; Def's Ex. B, p. 2-3.) Additionally, the results of a carcinoembryonic-antigen (CEA) scan indicated that Duff was not at risk for colon cancer. (*Id.*) On June 21, 2005, Dr. Siddiq determined that Duff was suffering from gastritis and renewed his prescription for Zantac. (Def's Ex. A.)

### III.  DISCUSSION

Duff asserts that the medical defendants acted with deliberate indifference to his health by failing to provide him medication for constipation on June 1 and June 2, 2005. He also complains that correctional officers and the medical defendants violated his constitutional rights by failing to respond to his requests to go to the healthcare unit for his stomach problems in June 2005. The defendants deny that they acted with deliberate indifference to Duff's health and assert that Duff was provided sufficient medical treatment during his incarceration in the Bullock County Correctional Facility. Nurses Groom and Taylor maintain that they do not recall refusing to provide medication to Duff, but that they would have provided any prescribed medication which was indicated to him. Dr. Siddiq likewise denies that he failed to provide Duff adequate medical treatment for a serious medical condition. Specifically, Dr. Siddiq asserts that, in his opinion, Duff's constipation is caused by a voluntary refusal to use public restrooms at Bullock County Correctional

Facility. (Def's Ex. B, Dr. Siddiq's Affid., p. 2.)

To prevail in a suit based on an Eighth Amendment claim about medical attention, an inmate must show at a minimum that correctional or medical officials have acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). Because society does not expect that inmates will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000 (1992). A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A corrections or medical official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). Under this standard, a corrections or medical official does not act with indifference by providing medical care that is different from that which an inmate desires. *See Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

A claim about a failure to provide immediate or emergency medical attention must involve medical needs that are obvious even to a layperson because they involve life-

threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176 (11th Cir. 1994). In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation. *Id.*

> The "seriousness" of an inmate's medical needs also may be decided by reference to the effect of delay in treatment.... Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." ... An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay." *Harris v. Coweta County*, 21 F.3d 388, 393-94 (11th Cir.1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill*, 40 F.3d at 1188-89.

Medical records indicate that, throughout his imprisonment in the Bullock County Correctional Facility, Duff received treatment from medical personnel and was routinely provided medication. (Defs' Ex. A.) In addition, Duff concedes that he was examined by medical specialists during his imprisonment. (Doc. No. 27-1, Pl's Response, p. 1.) Duff fails to demonstrate with any evidentiary showing that the brief delay in receiving his medication over a two day period caused his gastro-intestinal condition to worsen. While it is clear that

Duff did not receive a response from corrections or medical officials concerning his June 1 and June 2, 2005, written requests to see a physician, the medical records also demonstrate that Duff was examined by Dr. Siddiq on March 31, 2005, and that the doctor was awaiting the receipt of test results before taking further action concerning Duff's gastrointestinal problems. Although Duff argues that correctional officials "knew of the possibility that [he] had been diagnosed with cancer," the medical records indicate that Duff was never diagnosed with cancer during his imprisonment in the Bullock County Correctional Facility. Moreover, the medical records show that Duff's liver enzymes were within normal limits and that he was not at risk of suffering from colon cancer. (Def's Ex. A; Def's Ex. B, p. 2-3.) Thus, it is apparent that Duff's medical need at that time was not life-threatening or otherwise serious. *See Hill*, *supra*. Based on the foregoing, the concludes that Duff has failed to show that the defendants in any way disregarded a substantial risk to his health by delaying or denying him adequate medical treatment for his constipation and other gastrointestinal problems. Consequently, the defendants' motion for summary judgment should be granted.

### IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. This case be dismissed with prejudice.

3. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that the parties are DIRECTED to file any objections to the on or before August 13, 2007. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 31st day of July, 2007.

      /s/Charles S. Coody
    CHARLES S. COODY
    CHIEF UNITED STATES MAGISTRATE JUDGE